# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ADAM YOUNG,

                    Plaintiff,

v.                                                    Case No. 20-CV-1136-JPS

MICHAEL MAYER, PATRICIA
GOSS, and SHIKEYLA KYLES,                              **ORDER**

                    Defendants.

## 1.    BACKGROUND

This case has a long and tortured procedural history. The Court will summarize a few salient events. On July 24, 2020, Plaintiff Adam Young ("Young") filed this lawsuit, naming seven defendants, including Defendant Michael Mayer ("Mayer"). ECF No. 1. Defendants Patricia Goss ("Goss") and Shikeyla Kyles ("Kyles") were not originally named.[1] *Id.* The Court denied Young's contemporaneously filed motion to proceed in forma pauperis without prejudice for failure to provide sufficient information as to indigency. ECF No. 4. Thereafter, Young filed an amended complaint and paid the full filing fee. ECF No. 5. Only one of the seven original defendants, Shane Lewandowski ("Lewandowski"), appears to have been served with the amended complaint. ECF No. 6. On August 25, 2021, Lewandowski answered the amended complaint, and the suit proceeded as against only Lewandowski. ECF No. 8.

---

[1]Mayer, Goss, and Kyles, are, as explained below, the operative defendants and will hereafter be referred to as "Defendants."

Six months later, Young filed a document explaining that he sought to file a second amended complaint. ECF No. 16. When Lewandowski did not respond to that filing, the Court instructed Young to file a motion formally requesting leave to amend, focusing on the factors necessary to obtain such leave, and to attach the proposed second amended complaint thereto. ECF No. 19. At this point, the Court's original dispositive motions deadline was right around the corner. ECF No. 15. A flurry of motions and briefing followed, ECF Nos. 21, 23, 24, 27, and in the interim, Lewandowski filed a motion for judgment on the pleadings, ECF No. 25.

Even after receiving copious filings on Young's desire to amend, it was unclear to the Court which defendants and allegations Young sought to include in the suit. ECF No. 29. Because Young proceeds pro se, the Court gave him one last chance to clarify the same. *Id.* On May 5, 2022, the Court granted Young's motion for leave to file a second amended complaint given Young's precise delineation of which defendants he sought to name—the three operative Defendants now—and explanation that he only was able to ascertain those defendants after receiving documents responsive to an open records request. ECF Nos. 30, 31, 32. Young thereafter filed his second amended complaint on May 11, 2022. ECF No. 33. The Court denied Lewandowski's motion for judgment on the pleadings as moot, given that the second amended complaint removed Lewandowski. ECF No. 32. At that point, in the Court's view, the action was on course pending the three operative Defendants' appearances and answers to the second amended complaint.

Unfortunately, this is not where the issues ended. The action sat with little activity for over two months, when Young filed a motion for summary judgment. ECF No. 38. The Court denied that motion without prejudice,

and ordered Young to move for entry of default, given that Defendants had not appeared. ECF No. 39. Then, counsel for Lewandowski, who had been receiving electronic case notifications all along, filed a motion to set aside default, on the grounds that Defendants were not formally served with the second amended complaint. ECF No. 42. Instead, they had been formally served with a different document—Young's motion to amend the complaint. *Id.*; *see also* ECF No. 33-1.

As a result, the Court ordered Young to formally serve the second amended complaint and to file proof of service thereof, or to send Defendants the waiver of service forms. ECF Nos. 47, 51. Young, at great personal expense, made several formal service attempts on Defendants, but ran into a different procedural obstacle each time, which caused him constraints with respect to the Court's deadlines for service. *See, e.g.*, ECF Nos. 48, 49, 50, 51. Finally, new counsel noticed an appearance for Kyles, and counsel for Lewandowski (who, again, had been receiving electronic case notifications for over two years), appeared for Goss and Mayer (who had been served with documents in this lawsuit months ago, but not with the second amended complaint itself until recently). ECF Nos. 54, 59, 60, 61.

At long last, the case was on track, and the Court entered an amended trial scheduling order on October 27, 2022, which included a dispositive motions deadline of February 17, 2023. ECF No. 56. Nonetheless, in early February 2023, approximately one week before the summary judgment deadline, Young filed two motions requesting an extension of that deadline to allow him time to receive discovery responses

from Defendants. ECF Nos. 68, 74.[2] The Court denied the motions, explaining that the delays in this case were largely due to the Court allowing Young to file a second amended complaint late in the litigation and to start afresh with a nearly entirely new slate of defendants. ECF Nos. 73, 77. The Court noted that Young could have—and should have—served his discovery in the fall of 2022, when Defendants finally appeared. *Id.* Therefore, the summary judgment deadline remained as scheduled. *Id.*

In accordance with that deadline, on February 17, 2023, Goss and Mayer (the "State Defendants") filed a motion for summary judgment. ECF No. 81. On the same day, Kyles filed a motion for judgment on the pleadings. ECF No. 88. As delineated by Defendants,[3] Young's second amended complaint pleads four claims: (1) state law negligence; (2) Eighth Amendment deliberate indifference; (3) Fourteenth Amendment due process; and (4) First Amendment redress of grievances.[4] ECF No. 82 at 2. Defendants move for judgment in their favor on all four claims. Thereafter, on February 27, 2023, Young filed a motion for a preliminary injunction. ECF No. 91. All three motions are now fully briefed and ripe for disposition.

---

[2]Young filed initial disclosures ostensibly containing discovery requests with the Court on December 29, 2022. ECF No. 67. In response, the Court mailed him its "Notice Regarding Discovery" explaining that discovery requests are not to be filed with the Court, and that Plaintiff "must serve discovery requests on counsel for the defendants by mail or other means of delivery." ECF No. 67-1. Plaintiff thereafter postmarked the discovery requests about which his motion focused on January 17, 2023. ECF No. 70.

[3]Kyles joined portions of State Defendants' motion, ECF No. 90, and her briefing identifies the same claims as State Defendants' briefing.

[4]As explained further *infra*, the Court finds that Young also raises a First Amendment retaliation claim.

Young's motion for preliminary injunction focuses on the Court's denial of his motion to extend the summary judgment deadline. *Id.* For the reasons explained above, the Court stands by its decision on that issue, and Young's motion for preliminary injunction will be denied. Moreover, Young received the discovery responses on February 15, 2023; therefore, he *did* have them in time to file his own dispositive motion if he so chose, and, more importantly, had them to prepare his opposition briefing. ECF No. 96 at 1; ECF No. 97 at 1.

For the reasons set forth herein, State Defendants' motion for summary judgment will be granted in part and denied in part. Kyles's motion for judgment on the pleadings will be granted, and Kyles will be dismissed from this suit. Young's state law negligence, Eighth Amendment deliberate indifference, and First Amendment redress of grievances claims will be dismissed with prejudice. Young's Fourteenth Amendment due process and First Amendment retaliation claims shall proceed in accordance with the trial scheduling order, ECF No. 56.

## 2. LEGAL STANDARD

### 2.1 Rule 56

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most

Case 2:20-cv-01136-JPS   Filed 04/19/23   Page 5 of 24   Document 99

favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

### 2.2    Rule 12(c)

Rule 12(c) motions are evaluated under the same standard as motions to dismiss brought pursuant to Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). To state a claim sufficient to withstand a Rule 12(b)(6) motion, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations must "plausibly suggest that the plaintiff has a right to relief." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Champaign County*, 784 F.3d 1093, 1099 (7th Cir. 2015) (citations and quotations omitted). The Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81.

### 3.    RELEVANT FACTS[5]

### 3.1    The Parties

Young was confined at Kenosha Correctional Center ("KCC") from October 2016 to July 2017 and at Racine Correctional Institution ("RCI")

---

[5]Defendants submitted a statement of facts, which were the product of a meet-and-confer between the parties, in accordance with the Court's summary judgment protocols. ECF Nos. 57, 83. The Court allowed Defendants leave to file the statement of facts without Young's signature because Young had initially stipulated to those same facts, before withdrawing his agreement because he wanted Defendants to *additionally* stipulate to legal conclusions, such as that they acted with deliberate indifference. ECF No. 80.

The Court therefore adopts those stipulated facts with minor, non-substantive edits, including omitting internal citations for brevity. Although the

from July 2017 to August 2018. KCC, a Wisconsin Department of Corrections institution, offers work release programs with local employers through which employment is provided for qualified inmates. The allegations giving rise to Young's lawsuit occurred between July and August 2017 in the above-named institutions.

At all times relevant, Mayer was employed at RCI as a lieutenant. Goss was employed at RCI as a captain until July 22, 2017, at which point she began working at KCC as a captain. At all times relevant, Kyles was working at KCC as an Employment Support Specialist. Although Kyles is not among the "State Defendants," for purposes of this motion, it is essentially undisputed that she is considered a state employee. *See infra* Section 4.1.

## 3.2    Eighth Amendment – Deliberate Indifference

The inmate work schedule at KCC erroneously indicated that Young was scheduled to work on July 30, 2017,[6] causing him and two other inmates to be dropped off at a closed worksite ("Arvato") located in Pleasant Prairie, Wisconsin. Young and the two other inmates walked five miles from Arvato. While attempting to walk back to KCC from Arvato, the inmates were able to use a phone and contact KCC to be picked up.

---

Court previously stated that it would only consider the stipulated facts, ECF No. 80, Young has submitted documentary evidence that contradicts some of those facts. ECF No. 93-1. Where documentary evidence plainly contradicts the facts proffered as undisputed, the Court so notes, with a citation to that evidence. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Defendants also submitted two itemized disputed facts, which the Court notes in the Analysis section where applicable. ECF No. 83 at 4.

[6]The parties' stipulated facts state that these events occurred on July 31, 2017, but the Court's review of the record, *see, e.g.*, ECF No. 93-1 at 3, shows that they actually occurred on July 30, 2017.

### 3.3 Fourteenth Amendment – Due Process

On August 4, 2017, ECF No. 93-1 at 14, Young was subsequently issued a conduct report charging him with several infractions, including escape. After receiving the conduct report, Young was held in temporary lockup ("TLU") at RCI.

On August 16, 2017, prior to Young's due process hearing, Goss sent an email to Mayer stating, in relevant part, as follows:

> Mayer, Please hear the two conduct reports I sent to RCI, I had to leave town suddenly because my daughter is having her baby and the 21 days are coming up for these reports. I want them both to get 60 DS[7] . . . if you don't know what to do, please ask Tom for help but I know you got me.

On August 20, 2017, the same date of the due process hearing, ECF No. 93-1 at 16, Mayer sent a reply email stating, in relevant part: "Taken care of[.]"

Mayer served on the major disciplinary hearing committee that heard Young's appeal of the conduct report. The hearing committee found Young guilty of escape, contrary to Wis. Admin. Code DOC § 303.26 ("Escape under § 303.26"). The hearing disposition resulted in the loss of Young's work privileges and the imposition of 60 days of disciplinary separation. ECF No. 93-1 at 16. Young alleges that the hearing was not conducted in a manner that was fair and impartial.

### 3.4 First Amendment – Redress of Grievances

On August 11, 2017, Young submitted an inmate complaint to Goss, who also functioned as the Institution Complaint Examiner, explaining that Arvato was closed when he was dropped off. ECF No. 93-1 at 17. Goss

---

[7] "DS" stands for "disciplinary separation." Wis. Dep't of Corrections, Policy and Procedures ch. 303 Discipline, *Disciplinary Guidelines* (effective June 1, 2015), *available at* https://doc.wi.gov (last visited Apr. 17, 2023).

responded on October 23, 2017, explaining that Young was not allowed to file an inmate complaint because the disciplinary hearing had already occurred. *Id.*[8] Because he was placed in disciplinary separation, Young was not able to discuss the matter further with Goss or Mayer. Young appealed the hearing committee's decision, and the Deputy Warden affirmed the hearing disposition.

**4.    ANALYSIS**

As an initial matter, both Young's second amended complaint and his submissions to the Court lack clarity with respect to which claim is pleaded against which defendants. For example, in some submissions, Young has stated that his state law negligence claim is raised against only Kyles, while the constitutional claims are raised against State Defendants. *See, e.g.*, ECF No. 79-5 at 2. In others, Young has argued that the constitutional claims are intended to be raised against all Defendants because Kyles's negligence "caused [Young] to be subjected to cruel and unusual punishment" and "at no time did defendant Kyles come forward to expose the [actions] of defendants Goss and M[ayer]." ECF No. 98 at 1.

The Court determines that Young pleads only a negligence claim against Kyles. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (explaining that "some causal connection or affirmative link" such as direction, knowledge, or consent, is needed to sue an official under § 1983). Young does not plead that Kyles directed any actions of Mayer or Goss, or

---

[8]The parties' proffered undisputed facts mischaracterize the timeline, as evinced by the documentary evidence. ECF No. 93-1. The Court has corrected the same.

that Kyles knew that her actions would cause later constitutional deprivations. Nor does Young plead that Kyles had knowledge of any constitutional violations and failed to intervene. Young does not allege or argue negligence claims against the State Defendants. Therefore, the Court will analyze the constitutional claims against only State Defendants, and the negligence claim against only Kyles.

### 4.1    Young's State Law Negligence Claim

Young alleges that Kyles negligently created the work release schedule. ECF No. 33 at 1; ECF No. 92 at 1 ("Defendant Shikeyla Kyles['s] . . . actions were not willful in nature but simply breach [sic] a duty."). Young contends that Kyles created the schedule but Kyles's discovery responses, included in one of Young's submissions, deny her involvement. ECF No. 83 at 4; ECF No. 93-1 at 5 (submission showing Kyles created the work schedule); *id.* at 2 (Kyles's discovery responses denying that Kyles created the work schedule and asserting that Lewandowski created the work schedule).

This dispute as to who created the schedule, however, is immaterial, because Young did not give written notice to the Attorney General regarding his intent to bring a negligence claim and, as a result, the negligence claim is barred. ECF No. 83 at 4. Young disputes that he has not given notice, but he provides no evidence to render that dispute genuine. Indeed, his argument supporting the notice issue is that, under Wis. Stat. § 893.82(3m), only a prisoner need give written notice to the attorney general, and Young was no longer a prisoner when he brought this suit. ECF No. 98 at 1. Young's argument that he was not bound by any notice requirement whatsoever is unavailing.

Section 893.82(3m) provides that if a claimant is a prisoner, he may not commence a civil suit "until the attorney general denies the claim or until 120 days after the written notice under sub. (3) is served upon the attorney general, whichever is earlier." Section 893.82(3), in turn, applies to all civil actions "brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course or discharge of the officer's, employee's or agent's duties," regardless of who the claimant is. Unlike prisoner claimants, "a specific denial by the attorney general is not a condition precedent to bringing the civil action or civil proceeding," but the claimant must nonetheless "serve[] upon the attorney general written notice of [the] claim." Wis. Stat. § 893.82(3). Under either provision, however, the written notice must be filed within 120 days of the event causing the injury giving rise to the action. *Id.* It is unclear when Young was released from prison, but regardless of when that was, the notice requirement applies to Young's negligence claim.[9]

Young does not dispute that Kyles is a state officer, employee, or agent; however, in the interest of thoroughness, the Court analyzes the same. It is undisputed that Kyles worked as an Employment Support Specialist at KCC. The record shows that while Kyles worked at KCC, she "was not employed by [KCC]"; instead, she was "an employee of Horizon Healthcare." ECF No. 93-1 at 9; *see also* ECF No. 93 at 2. In *Sanders v. Vishny*, this District analyzed of the meaning of "state officer, employee or agent" within § 893.82(3). 563 F. Supp. 3d 938, 942–43 (E.D. Wis. 2021). After reviewing the statutory definition and applicable case law, the court

---

[9] The notice of claim requirement does not apply to federal constitutional claims. *Thorp v. Town of Lebanon*, 612 N.W.2d 59, ¶ 21 (Wis. 2000).

concluded that the statute was intended to "be given an expansive meaning." *Id.* at 943 (quoting *In re Chezron M.*, 698 N.W.3d 95, ¶ 26 (Wis. 2005)). Otherwise, the statute would exclude "persons routinely treated as state employees" and "[n]othing in the text of the statute suggests that the legislature intended this result." *Id.* at 944 (concluding that public defenders are state officers, employees, or agents).

The Court has not located any Wisconsin case law analyzing whether an individual employed by a private employer, but working for the state, is an agent of the state. However, the Court agrees with the *Sanders* court's conclusion that the statute is to be interpreted broadly. For example, Wisconsin courts have held that an individual driving a vehicle owned by the state is an agent of the state. *See Est. of Hopgood ex rel. Turner v. Boyd,* 825 N.W.2d 273, ¶¶ 1, 5 (Wis. 2013); *but see Miller v. Mauston Sch. Dist.,* 588 N.W.2d 305, 312 (Wis. Ct. App. 1998) (special education services agency not state agent because Wisconsin Statutes include such programs within definitions of local government units). Here, the prison industries portions of the Wisconsin Statutes are expressly governed by the state department of corrections. *See, e.g.*, Wis. Stat. § 303.01. Upon consideration of all this authority, the Court concludes that Kyles, while working at KCC as the Employment Support Specialist, was an agent of the state.

The notice of claim statute is "both 'jurisdictional' and 'a condition precedent to the right to maintain an action.'" *Sanders*, 563 F. Supp. 3d at 942 (quoting *Ibrahim v. Samore*, 348 N.W.2d 554, 558 (Wis. 1984)). Therefore, because there is no genuine dispute to the fact that Young was required to but did not give written notice to the attorney general of his negligence

claim against Kyles, Kyles's motion for judgment on the pleadings will be granted.[10] As a result, Kyles will be dismissed from this action.

## 4.2 Young's Fourteenth Amendment Due Process Claim

Young contends that Goss's email to Mayer "instructing him of her demands for the handling" of his hearing deprived him of a fair and impartial disciplinary hearing.[11] ECF No. 33 at 1. The Court agrees. Specifically, Young avers that his punishment of 60 days of disciplinary separation was "predetermined." ECF No. 93 at 6. Young's factual support therefor is Goss's August 16, 2017 email to Mayer asking him to serve on the disciplinary committee at Young's hearing in her place, and explaining that she wanted Young to receive a punishment of 60 days of disciplinary separation. Mayer responded to the email on the day of the hearing stating, "[t]aken care of." Sixty days of disciplinary separation is indeed the punishment Young received after his hearing, in addition to a loss of his work release privileges. Further, because Young was labeled an escapee, he contends that he lost any opportunity to participate in community programs. ECF No. 33 at 1.

Due process entitles prisoners to the following protections in disciplinary proceedings:

---

[10]The dismissal of the negligence claim will operate with prejudice, because it is now too late for Young to strictly comply with the notice of claim statute as required. *Sanders*, 563 F. Supp. 3d at 946 n.6.

[11]To the extent Young did not raise this issue before the committee or on any administrative appeal, the issue is not procedurally defaulted, because the record shows that Young did not have the information until his 2022 open records request was completed. *See Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002) (declining to analyze bias claim because "[t]he prisoner had the information about the alleged [bias] before he filed his administrative appeal, yet failed to advise the appellate tribunal, thus forfeiting his right to [raise] it [in federal court]").

> (1) advance (at least 24 hours before hearing) written notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (quoting *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992)). Young takes issue with the second factor: that he was deprived of the opportunity to be heard by an impartial decision maker, arguing that Mayer was biased against him because of Goss's instructions.

"Adjudicators are entitled to a presumption of honesty and integrity, . . . and thus the constitutional standard for impermissible bias is high[.]" *Piggie v. Cotton*, 342 F.3d 660, 665–66 (7th Cir. 2003) (citations omitted). However, such a presumption is "soundly rebutted" where the plaintiff presents evidence to support his claim that the decision maker was biased. *Higgason v. Lemmon*, 6 F. App'x 433, 435 (7th Cir. 2001) (quoting *Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (holding that, had the plaintiff provided proof of his argument that the chairman of the hearing board "was not an impartial decision maker because he had been instructed by Captain Barnett, a higher-ranking prison official, to find [the plaintiff] guilty," such a hearing may not have been impartial)).

Indeed, the Seventh Circuit is clear that "[t]o satisfy due process, a hearing 'must be a real one, not a sham or a pretense.'" *Orozco v. Butler*, 766 F. App'x 365, 369 (7th Cir. 2019) (quoting *Ryan v. Ill. Dep't of Children & Family Servs.*, 185 F.3d 751, 762 (7th Cir. 1999) (holding that, where "the responsible DCFS officials had already decided to fire [the plaintiffs] and

therefore the hearing would in reality be a phony opportunity to contest the charges," the plaintiffs' right to due process was violated)). "[A hearing] in which the punishment has been predetermined raises doubt that the hearing is, in fact, fair and impartial." *Id.*; *see also Leyva v. Baldwin*, No. 20-CV-00060-SPM, 2020 WL 7189844, at *3 (S.D. Ill. Dec. 7, 2020) ("[The plaintiff's] claims that his sanctions were predetermined suggest that the disciplinary decision issued by the Adjustment Committee was not supported by 'some evidence,' as is required to satisfy due process under the Fourteenth Amendment.").

By way of additional example, in *Gutierrez v. Baldwin*, the plaintiff learned that a prison hearing committee member wanted him to receive a punishment of one year in segregation. No. 3:18-CV-01478-SMY, 2022 WL 18027527, at *2 (S.D. Ill. Dec. 30, 2022). After the hearing, the plaintiff learned that his disciplinary recommendation was indeed one year of segregation, among other punishments. *Id.* The court, denying summary judgment based on a genuine dispute of material fact, held that the statements by the hearing committee member discussing the predetermined punishment "could reflect bias and preclude a finding that [the plaintiff] received a hearing before an impartial decisionmaker." *Id.* at *7.[12]

---

[12]State Defendants wholly fail to submit any of the "predetermined punishment" or "sham hearing" case law to the Court, arguing that bias can only be found where a hearing officer "has a direct, personal, or otherwise substantial, involvement in the circumstances underlying the issue being reviewed." ECF No. 82 at 8 (quoting *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983)). However, State Defendants decidedly chop the *Redding* opinion off at the knees by neglecting to quote the next sentence, which holds that "circumstances other than those arising directly out of the disciplinary process may raise such doubts about the integrity of the hearing procedure and the impartiality of its participants so as to

Case 2:20-cv-01136-JPS   Filed 04/19/23   Page 15 of 24   Document 99

Young has proffered sufficient evidence to indicate that what happened here may be a conglomeration of all the wrongs in these cases. As in *Higgason* and *Orozco*, Goss, a superior to Mayer, sent Mayer an email on August 16, 2017, four days prior to Young's hearing, asking Mayer to cover the hearing and communicating the punishment she wanted Young to receive. Construing the available facts in the light most favorable to Young, which the Court must do on summary judgment, Young raises a genuine dispute of material fact that Goss's email to Mayer constituted Goss adjudicating Young's guilt herself in advance of the hearing.

In the same vein, Young raises a genuine dispute of material fact that Mayer was all too keen to oblige and execute Goss's pre-hearing adjudication. As in *Gutierrez*, Young received the exact punishment Goss had suggested, among other punishments. Mayer then mechanically responded "[t]aken care of" to Goss when the deed was done. This conduct reflects Goss's refusal to even consider (or authorize Mayer to consider)

---

trigger due process considerations." *Redding*, 717 F.2d at 1113. In the same vein, State Defendants' arguments regarding prejudice to Young rely on inapposite case law regarding a prisoner's complaint that a witness request was refused. *Piggie*, 342 F.3d at 665–66.

Instead, State Defendants seemingly chose to sweep an entire body of case law under the rug, perhaps hoping that the Court would not locate it, rather than citing and distinguishing it. The Court will not tolerate this deceptive and, frankly, insulting behavior from its officers. Researching the issue from Young's perspective—something every litigator should do—would have easily led State Defendants to this case law. Even viewing State Defendants' failure to cite and address this case law in the best light—perhaps counsel believed the last-minute substitution of Goss for Mayer and giving of instructions was a defensible decision made for administrative convenience—it still reflects a lack of research and attention to detail. If State Defendants took that position, they can and should have said so, again locating and distinguishing applicable case law.

further evidence beyond what was known before the hearing. Such refusal calls into serious doubt whether the hearing was impartial.

While State Defendants may be entitled to request that a colleague do them a favor, that entitlement should not extend to a disposition instruction from a superior to an inferior prior to a due process hearing. An administrative convenience or a last-minute substitution is one thing, but when combined with instructions delivered through staff hierarchy, where such instructions evince a predetermination of guilt and a preordained punishment, impartiality must be called into question. Young has raised a genuine and material fact dispute as to Goss's and Mayer's intent, and where that intent falls between these two benchmarks. It is for the jury to ultimately make that decision.

Additionally, Young has offered significantly more than "mere speculation about the reasons for the matching penalties" that were suggested before his hearing and actually given. *Vega v. Morgan*, No. 16-CV-573-JDP, 2018 WL 1318916, at *3 (W.D. Wis. Mar. 14, 2018). Specifically, Young has submitted the exact document showing that his punishment was predetermined. The maximum number of days of disciplinary separation that may be imposed when an inmate is found guilty of Escape under § 303.26 is 360 days. Wis. Admin. Code DOC § 303.72(2), Table DOC 303.72. While the disposition is within the disciplinary code, the fact that such a range of penalties may be offered—but both Goss's suggestion and Young's actual punishment were the same—further supports Young's position. Again, Young has rebutted the presumption of impartiality and raised a genuine dispute of material fact as to whether he was deprived of the opportunity to be heard by an impartial decision maker.

Case 2:20-cv-01136-JPS   Filed 04/19/23   Page 17 of 24   Document 99

State Defendants brief the affirmative defense of qualified immunity. ECF No. 82 at 9. The qualified immunity doctrine protects government officials from civil liability when they perform discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As of July and August 2017, it was clearly established that a disciplinary proceeding should not be conducted as a "sham" with a predetermined result. *See, e.g., Ryan*, 185 F.3d at 762; *Levenstein v. Salafsky*, 164 F.3d 345, 351–52 (7th Cir. 1998) (where a decision has already been made and subsequent procedures are a sham, plaintiff states a procedural due process claim) (citing *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 164 (1951)). Therefore, because Young has raised a genuine and material fact dispute as to whether the hearing was a sham with a predetermined result, until that dispute is resolved, State Defendants are not entitled to qualified immunity on Young's due process claim. *Smith v. Finkley*, 10 F.4th 725, 750 (7th Cir. 2021). The claim shall proceed against State Defendants.

### 4.3    Young's Eighth Amendment Deliberate Indifference Claim

Young alleges two instances of Eighth Amendment deliberate indifference. First, he argues that, after being dropped off at Arvato, he was forced to walk five miles for help to return to his institution. ECF No. 33 at 1. Second, he contends that after he was stranded, he engaged in a protected act. ECF No. 93 at 2. After engaging in that protected act, he was subjected to cruel and unusual punishments in retaliation therefor. *Id.* The Court discerns that the alleged cruel and unusual punishments are Young's time in TLU, Goss's predetermination that Young should receive 60 days of disciplinary separation, and the loss of Young's work release privileges. *Id.*

"[A] viable Eighth Amendment claim must contain both an objective and subjective component." *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The objective component is satisfied when a claimant shows that the deprivation is objectively "sufficiently serious." *Id.* (internal citations omitted). "[T]o be sufficiently serious[,] a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* (citation and quotation marks omitted). The subjective component requires that the claimant show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference." *Id.* (citation omitted).

As to the five-mile walk, Young does not explain any injuries he suffered due to this activity. Nor does he plead any threat to his safety. Indeed, he was able to locate a phone and call for transportation to return to his institution. There is further no evidence that he sought medical attention for any injuries due to the walk. *See, e.g.*, *id.* at 846 (finding that "breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of injury" may have caused the claimant "distress and discomfort," but do not amount to denial of "the minimal civilized measure of life's necessities"). Young also does not plead that either State Defendant knew that Arvato was closed or that, as a result, Young would be forced to walk back to the institution and place his health and safety at risk. Indeed, Young specifically alleges that the work schedule was created negligently, not intentionally. ECF No. 92 at 1 (describing creation of work schedule as "not willful in nature").

Young's assertions regarding his time in TLU, his 60 days of disciplinary separation, and his loss of work release privileges fare no better under the Eighth Amendment. Wisconsin Department of Corrections guidance conveys that TLU is "[a] temporary non-punitive status allowing an inmate to be separated from the general population pending further administrative action." Wis. Dep't of Corrections, Policy and Procedures ch. 303 Discipline, *Temporary Lock Up* (effective May 27, 2015).[13] At a minimum, Young appears to have been in TLU after he received his conduct report while awaiting his hearing. Young does not plead that he was in TLU for an overly prolonged period, or that any conditions of TLU denied him the "minimal civilized measure of life's necessities." *Henderson*, 196 F.3d at 845. The same is true, as relevant, with respect to Young's 60 days of disciplinary separation and his loss of work release privileges.

This failure alone is fatal. *See Townsend*, 522 F.3d at 773–74. However, even if Young did plead conditions that were objectively sufficiently serious, he does not plead any facts showing that he complained about these issues to either State Defendant, and that his complaints were denied or ignored. *Id.* at 774 (assessing competing affidavits regarding knowledge of conditions). Because Young pleads only that his placement in TLU, his 60 days of disciplinary separation, and his loss of work release privileges were in retaliation for his protected act, these issues will instead be taken up *infra* as First Amendment retaliation claims. *See Zach v. Lewis*, No. 13-CV-849-JDP, 2017 WL 280825, at *3 (W.D. Wis. Jan. 20, 2017) (discussing the

---

[13] *Available at* https://doc.wi.gov (last visited Apr. 17, 2023). The Seventh Circuit has held, as to a Fourteenth Amendment claim regarding TLU, that "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008).

plaintiff's "First Amendment retaliation claims against defendants . . . for placing him in TLU in response to his grievance"). Young does not state a viable Eighth Amendment claim; therefore, State Defendants' motion for summary judgment is granted as to this claim.

### 4.4    Young's First Amendment Claims

State Defendants delineate Young's First Amendment claim as one for a denial of his right to petition the Government for a redress of grievances, or "the constitutional right of access to courts." ECF No. 82 at 4; *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). To state such a claim, a plaintiff must plead, among others, acts by prison administrators that frustrate his right to litigate in court. *Gentry*, 65 F.3d at 558. Young argues that Goss rejected his August 11, 2017 inmate grievance, but does not explain how this action affected his right to litigate his case in court. ECF No. 93 at 2. Moreover, other than this action, Young does not plead any acts by prison administrators that frustrated his right to the courts and, indeed, was (and is) able to access the courts. Therefore, State Defendants' motion for summary judgment is granted on any redress of grievances claim.

As noted above, however, the Court has identified that Young also pleads a First Amendment retaliation claim. Young alleges that he was subjected to (1) time in TLU, (2) Goss's predetermination that he should receive 60 days of disciplinary separation (and Mayer's imposition of the same), and (3) the loss of his work release privileges, all after engaging in a "protected act." ECF No. 93 at 2. For the same reasons explained above, *supra* note 12, the Court is dismayed that State Defendants did not brief this obvious claim, again perhaps hoping that it would be swept under the rug.

The First Amendment retaliation claim is clear here, both from Young's own language and the documents he has consistently appended

Case 2:20-cv-01136-JPS    Filed 04/19/23    Page 21 of 24    Document 99

throughout this litigation. ECF No. 33 (pleading First Amendment claim); ECF No. 93 (discussing First Amendment retaliation). To prevail on his First Amendment retaliation claim, Young must show that: "(1) he engaged in activity protected by the First Amendment; (2) defendants took actions that would deter a person of 'ordinary firmness' from engaging in the protected activity; and (3) the First Amendment activity was at least a 'motivating factor' in defendants' decisions to take those actions." *Zach*, 2017 WL 280825, at *3 (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

All three elements are met in this case. Young's conduct report was signed on August 2, 2017 and provided to Young on August 4, 2017. Young submitted his inmate complaint, which is protected speech, on August 11, 2017 to Goss, the Institution Complaint Examiner, who later rejected the complaint. *See Antoine v. Ramos*, 497 F. App'x 631, 635 (7th Cir. 2012) (inmate grievance is protected speech). Five days later, on August 16, 2017, Goss emailed Mayer her instructions with respect to the disposition of Young's hearing, which disposition is objectively severe enough to deter a person of ordinary firmness from engaging in protected activity. *See Zach*, 2017 WL 280825, at *3 ("[S]egregation is not a walk in the park . . . 12 days of segregation and reduced privileges could deter a person of ordinary firmness from filing grievances in the future."); *see also Segreti v. Gillen*, 259 F. Supp. 2d 733, 737 (N.D. Ill. 2003) (denying motion to dismiss First Amendment retaliation claim related to transfer out of work-release program in retaliation for inmate grievance).

The hearing was held on August 20, 2017. It is unclear when during this sequence Young was placed in TLU. Therefore, in the absence of a timeline, it is impossible to say one way or another whether TLU was imposed in retaliation for Young's grievance. The Court trusts that the

timeline as to TLU will be sorted out prior to trial. However, the timeline now before the Court *does* suggest that Young's disciplinary separation and loss of work release privileges may have been imposed in retaliation for his inmate grievance, and case law shows that these actions are sufficiently severe enough to warrant consideration. At a minimum, as to these actions, Young has raised "circumstantial evidence to prove that [Goss] was aware of his grievance and that [Goss] based [her] decision . . . on that grievance." *Zach*, 2017 WL 280825, at *4. Young's pleadings and evidence also "raise[] the inference that [Goss] told [Mayer] about [Young's] grievance for the purpose of having [Mayer] punish [Young] for it." *Id.* at *5. For all these reasons, and because State Defendants do not substantively brief qualified immunity as to *any* First Amendment claim,[14] Young's First Amendment retaliation claim shall proceed.

5.    **CONCLUSION**

Based on the foregoing, the Court denies Young's motion for preliminary injunction. ECF No. 91. The Court grants in part and denies in part State Defendants' motion for summary judgment. ECF No. 81. The Court grants Kyles's motion for judgment on the pleadings, and Kyles will be dismissed from this suit. ECF No. 88. Young's claims for state law negligence, Eighth Amendment deliberate indifference, and First Amendment redress of grievances are dismissed with prejudice. Young's claims for Fourteenth Amendment due process and First Amendment retaliation shall proceed.

---

[14]Even if they had substantively briefed qualified immunity as to this or any First Amendment claim, it was clearly established in July and August 2017 that Young had a right to be free from retaliation for protected activity. *See, e.g.*, *Greene v. Doruff*, 660 F.3d 975 (7th Cir. 2011).

Accordingly,

**IT IS ORDERED** that Plaintiff Adam Young's motion for preliminary injunction, ECF No. 91, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Shikeyla Kyles's motion for judgment on the pleadings, ECF No. 88, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Shikelya Kyles be and the same is hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that Defendants Michael Mayer and Patricia Goss's motion for summary judgment, ECF No. 81, be and the same is hereby **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that Plaintiff Adam Young's claims for state law negligence, Eighth Amendment deliberate indifference, and First Amendment redress of grievances be and the same are hereby **DISMISSED with prejudice**; and

**IT IS FURTHER ORDERED** that Plaintiff Adam Young's claims for Fourteenth Amendment due process and First Amendment retaliation shall proceed in accordance with the trial scheduling order, ECF No. 56.

Dated at Milwaukee, Wisconsin, this 19th day of April, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge